IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 3:10-834-JFA |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| GARY LEE GILLION | ) | |

At the conclusion of his trial on June 15, 2011, a jury convicted the defendant, Gary Lee Gillion, of conspiracy to commit mail fraud and mail fraud. Specifically, he was convicted of conspiring to violate 18 U.S.C. § 1341, in violation of 18 U.S.C. § 371, and four substantive counts of violating 18 U.S.C. § 1341.  At the close of the government's case, the defendant made a motion pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure and asked the court to find that the evidence was insufficient to sustain a conviction. The court denied that motion.

This matter is now before the court on the defendant's motion for judgment of acquittal pursuant to Rule 29(c) filed on June 27, 2011. (ECF No. 111). This matter has been fully briefed, and a hearing was held on July 25, 2011. After considering the briefs and oral arguments of both parties, the court denies the defendant's motion.

**I.     Facts**

Gary Gillion was the southeast regional manager for CitiCapital, which was in the trailer leasing business. Trial testimony shows that in 2003, while still employed by CitiCapital, he secretly started a competing trailer leasing business named Capital City. The

purpose of the business was to personally profit on deals that should be negotiated for the benefit of CitiCapital. Gillion went to great lengths to conceal his side business from his employer, including forging documents and using cashier's checks to hide his connection to Capital City. He knew he needed help from inside the company to keep his actions a secret from his employer, so he paid one of CitiCapital's vice presidents and the co-conspirator in this case, John DalCanton, a portion of his profits in exchange for DalCanton's assistance.

According to DalCanton's testimony at trial, Gillion used three different methods to carry out the scheme. The first method involved rental agreements. Unbeknownst to CitiCapital, he rented CitiCapital trailers to CitiCapital customers, but instructed those customers to pay Capital City. The second method involved trailer sales. Gillion negotiated a sales price with a customer but would report a lower price to CitiCapital. He then instructed the customer to make the check out to Capital City for the higher price, and then he would pay CitiCapital the lower price and keep the excess profit. The final method in Gillion's scheme involved lease-to-own contracts. On two occasions, he negotiated agreements with customers for trailers that belonged to CitiCapital. Once the agreements were made, he purchased the trailers from CitiCapital at a discounted rate without revealing to CitiCapital his true identity. Then Capital City collected payments from the customers, and Gillion made a profit.

This final method of the scheme was implemented on Baker Transportation, and this transaction was a focus of the overt acts and substantive counts. While still employed by

CitiCapital, Gillion negotiated an agreement with Baker for the profit of Capital City. The object of the agreement was trailers that Gillion or Capital City did not own at the time. Then, after the agreement was reached, he bought the trailers from CitiCapital without revealing that he was an employee trying to make a personal profit on the side. In order to effectuate this plan secretly and to buy the trailers at a price that would insure a profit, purchase documents were forged and DalCanton approved the sale. Special Agent McClure testified that, ultimately, Gillion made a profit of $27,000 on this deal.

The jury convicted Gillion of conspiracy to commit mail fraud and mail fraud. The Baker deal is the subject of the defendant's motion. He submits that "the government failed to prove beyond a reasonable doubt that CitiCapital Trailer Rental had a property interest in the lease payments for eight trailers which the Defendant received from Baker Transportation."

**II.     Standard of Review**

In considering a motion for judgment of acquittal, the court must decide "whether the evidence, viewed in the light most favorable to the prosecution, is such that the finder of fact might find the defendant guilty beyond a reasonable doubt." United States v. Wooten, 503 F.2d 65, 66 (4th Cir. 1974). In determining the issue of substantial evidence, the court neither weighs the evidence nor considers the credibility of witnesses. United States v. Arrington, 719 F.2d 701 (4th Cir. 1983).

**III.    Law and Analysis**

A conviction under the mail fraud statute requires that the victim have an interest in the property fraudulently obtained by the defendant. United States v. Adler, 186 F.3d 574, 576 (4th Cir. 1999). However, the Supreme Court has instructed that the statute should be "interpreted broadly insofar as property rights are concerned." United States v. Gray, 405 F.3d 227, 234 (4th Cir. 2005) (citing McNally v. United States, 483 U.S. 350, 356 (1987)). Additionally, a "property owner has an intangible right to control the disposition of its assets." Id.

The defendant's argument hinges on the theory that CitiCapital had no property interest in the money the defendant received from Baker Transportation. Whether CitiCapital had a property interest in Baker as a customer was a decision for the factfinder based on the evidence introduced at trial.

At trial, there was conflicting testimony about Baker's status as a customer of CitiCapital. Kevin Sparks, a CitiCapital employee in charge of Baker's account, testified that Baker was classified as a "late payer" and that CitiCapital would no longer lease trailers to Baker. However, Sparks also acknowledged that the defendant and DalCanton had the authority to make the decision to lease to Baker anyway.

William Baker, the owner of Baker Transportation, testified that his company did not have a contract with CitiCapital to rent trailers exclusively from it and that he was free to rent trailers from anyone he chose. However, Baker did not take his business very far. Instead,

4

he negotiated a deal for CitiCapital's trailers with a CitiCapital employee, waited for Gillion to secretly purchase those trailers by paying DalCanton to cover up his actions, and then paid Gillion for those trailers. Of course, Baker did not know that this is what was happening because Gillion made false representations to Baker about the deal.

The government's theory of this case was that CitiCapital had a property interest in the disposition of its assets and these behind-the-scenes deals of its employees involving its trailers were in conflict with that interest. The jury clearly agreed with that theory. The only question before this court is whether sufficient evidence was presented to the jury to support its verdict. For its case in chief, the government called ten witnesses, including the defendant's co-conspirator, John DalCanton, who outlined the defendant's plan to deceive his employer by creating a sham competing company. Witnesses also testified as to how the Baker Transportation deal was in furtherance of the conspiracy and how the mails were used to accomplish the plan.

**IV.   Conclusion**

The court finds that when viewed in the light most favorable to the prosecution sufficient evidence was presented to the jury to support its guilty verdict. Therefore, the defendant's motion for judgment of acquittal is denied.

IT IS SO ORDERED.

August 8, 2011                                         Joseph F. Anderson, Jr.
Columbia, South Carolina                      United States District Judge